**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

MATTHEW ROBERT BAILEY,

        Plaintiff,

vs.                                                     Case No.  3:09-cv-383-J-JRK

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

_____/

## OPINION AND ORDER[1]

### I.  Status

      Matthew Robert Bailey ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claim for disability insurance benefits. His alleged inability to work is based on the impairments of spondyloarthropathy, arthalgia, undifferentiated autoimmune disorder, connective tissue disorder, post traumatic stress disorder ("PTSD"), light sensitivity, anxiety, and depression.  (Doc. No. 15; "Tr.") at 107, 364, 371, 375; Memorandum in Support of Plaintiff's Position (Doc. No. 8; "Pl.'s Mem.") at 1.  On October 14, 2005, Plaintiff filed a claim for disability insurance benefits, alleging an onset date of January 1, 2005.[2]  Tr. at 15; Pl.'s Mem. at 1; see also Tr. at 72.  Plaintiff is insured for disability insurance benefits through December 31, 2010.  Tr. at 15.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge, see Consent to the Exercise of Jurisdiction by a United States Magistrate Judge (Doc. No. 10), and the Order of Reference was entered on September 23, 2009 (Doc. No. 11).

[2] The alleged onset date was later amended to June 1, 2005.  Tr. at 616.

On July 15, 2008, an Administrative Law Judge ("ALJ") held a hearing at which Plaintiff and a vocational expert ("VE") testified.  Tr. at 612-61.  On August 6, 2008, the ALJ issued a Decision finding Plaintiff not disabled.  Tr. at 15-25.  On March 5, 2009, the Appeals Council denied Plaintiff's request for review.  Tr. at 5-8.  On April 28, 2009, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1) seeking judicial review of the final administrative decision denying Plaintiff's claim.  Complaint at 1.  Plaintiff has exhausted the available administrative remedies, and the case is properly before the Court.

Plaintiff raises six issues: (1) whether "[t]he ALJ erred by failing to accord proper weight to the uncontroverted opinions of the treating physicians"; (2) whether "[t]he ALJ in assessing Plaintiff's mental health impairments failed to address his low GAF scores[3] or to indicate what weight, if any, he was giving to those findings"; (3) whether "[t]he ALJ failed to assess the Plaintiff's documented inability to ambulate effectively in regards to the equivalency of a listed impairment"; (4) whether "[t]he ALJ erred in considering the full effects of the significant erosion of the unskilled sedentary occupational base as represented by Plaintiff's inability to ambulate effectively pursuant to Social Security Ruling 96.9p"; (5) whether "[t]he ALJ erred as a matter of law in failing to address what weight, if any, he was giving to the opinion of the Veterans Administration, who had previously ruled that Plaintiff was unemployable due to his multiple medical impairments"; and (6) whether "[t]he ALJ failed to follow the substantial evidence on the record."  Pl.'s Mem. at 5.  After a thorough review

---

[3] GAF scores are "global assessment of functioning" scores; they are explained more fully infra pp. 16-18.

of the entire record and consideration of the parties' respective memoranda, the Commissioner's final decision is due to be affirmed for the reasons explained herein.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the plaintiff (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy.  20 C.F.R. § 404.1520; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  Here, the ALJ followed the five-step sequential inquiry.  Tr. at 17-25.  At step one, the ALJ observed that Plaintiff "has not engaged in substantial gainful activity since June 1, 2005, the alleged amended onset date."  Tr. at 17.  At step two, the ALJ found Plaintiff suffers from the following severe impairments: "spondyloarthropathy with joint pain; undifferentiated autoimmune connective tissue disorder; posttraumatic stress disorder; and depressive disorder."  Tr. at 17.  At step three, the ALJ ascertained Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. at 17.

---

[4]   "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).

The ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform sedentary work, "except [Plaintiff] must ambulate with crutches and requires low stress work." Tr. at 19. At step four, the ALJ found that Plaintiff is unable to perform his past relevant work. Tr. at 23. Nevertheless, after considering Plaintiff's age, education, work experience, and RFC, the ALJ determined "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Tr. at 24. The ALJ concluded Plaintiff has not been under a disability from June 1, 2005 (the amended alleged onset date) through the date of the Decision. Tr. at 25.

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077,

1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV.  Discussion

#### A.  Treating Physicians

Plaintiff argues the ALJ "erred by failing to accord the proper weight to the uncontroverted opinions of the treating physicians."  Pl.'s Mem. at 6 (capitalization omitted). Specifically, Plaintiff argues the ALJ should have given more weight to the medical opinions of five treating physicians:  (1) Steven C. Jones, M.D.; (2) Selden Longley, M.D.; (3) Jon D. Hodgin, M.D.; (4) Fred Schert, M.D.; and (5) Barbara A. Hilgenberg, M.D.  Id. at 6-7.  Plaintiff does not provide specific arguments addressing the particular opinions of each of these physicians and the ALJ's reasons for discounting them.  See id.  Instead, Plaintiff makes a blanket argument that these physicians opined Plaintiff is unable to work; their opinions are "uncontroverted"; and "[c]ertainly the opinion of five different treating physicians constitutes substantial evidence."  Id. at 7.  Plaintiff asserts the ALJ incorrectly found the opinions of these physicians to be unsupported by the evidence of record because there are voluminous medical records that "confirm extensive treatment, extensive testing, prescriptions, physical therapy and counseling."  Id.  Plaintiff makes this broad statement without pointing to any specific documents that support any of the physicians' opinions.

Upon consideration, the proper analysis is to address each physician's specific opinion in the context of the particular evidence of record rather than dealing in broad

generalities. In the paragraphs that follow, the undersigned first discusses the applicable law for assessing the weight to be given to the opinions of treating physicians, and then the law is applied to each of the opinions of the treating physicians identified by Plaintiff as having been improperly discounted.

The Regulations instruct ALJs how to weigh the medical opinions[5] of treating physicians[6] properly. <u>See</u> 20 C.F.R. § 404.1527(d). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2). When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering factors such as the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician. 20 C.F.R. § 404.1527(d).

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing

---

[5] Medical opinions are statements from physicians that reflect judgments about the nature and severity of the claimant's impairment, including symptoms, diagnosis, prognosis, and what the claimant can still do despite the impairment. 20 C.F.R. § 404.1527(a)(2).

[6] A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. <u>See</u> 20 C.F.R. § 404.1502.

"good cause" for discounting it.  <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1997).

Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence

supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating

physician's own medical records.  <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1240-41 (11th Cir.

2004); <u>see also</u> <u>Edwards v. Sullivan</u>, 937 F.2d 580, 583-84 (11th Cir. 1991); <u>Schnorr v.</u>

<u>Bowen</u>, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical

opinion may be discounted when it is not accompanied by objective medical evidence).  The

ALJ must "state with particularity the weight he [or she] gave the different medical opinions

and the reasons therefor."  <u>Sharfarz v. Bowen</u>, 825 F.2d 278, 279-80 (11th Cir. 1987); <u>see</u>

<u>also</u> <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1212 (11th Cir. 2005) (finding no reversible error

when "the ALJ articulated specific reasons for failing to give [a treating physician] controlling

weight," and those reasons were supported by substantial evidence); <u>Lewis v. Callahan</u>, 125

F.3d 1436, 1440 (11th Cir. 1997) (explaining that, if an ALJ concludes the medical opinion

of a treating physician should be given less than substantial or considerable weight, he or

she must clearly articulate reasons showing "good cause" for discounting it).

### 1.  Dr. Jones

On August 11, 2005, Plaintiff saw Dr. Jones "for evaluation of constant, chronic joint

pain."  Tr. at 368.  Dr. Jones noted Plaintiff "attributes his illness to beginning in 1999 when

he received a series of five anthrax vaccinations while in the Marines."  Tr. at 368.  On

November 22, 2005, Dr. Jones completed a Medical Verification Form in which he indicated

Plaintiff's condition "permit[s] work with restrictions," the restriction being that Plaintiff "must

ambulate [with] crutches."  Tr. at 364-65.  However, Dr. Jones also indicated Plaintiff was

"unable to work." Tr. at 364.  Dr. Jones stated that a treatment plan had been prescribed "as per Dr. Longley."  Tr. at 365.

The ALJ gave "no weight" to Dr. Jones's opinion that Plaintiff is unable to work.  Tr. at 22-23.  The ALJ found Dr. Jones's opinion to lack support in his own treatment notes.  Tr. at 23. The ALJ noted Dr. Jones's opinion "was provided on only the second visit . . . ."  Tr. at 22.  The ALJ explained that Plaintiff's "arthalgias were without objective signs and Dr. Jones was at a total loss to explain Plaintiff's symptomatology."  Tr. at 23.  Nevertheless, the ALJ gave "some weight" to Dr. Jones's opinion that Plaintiff needs crutches to ambulate.  Tr. at 23.[7]

As the ALJ observed, Dr. Jones saw Plaintiff on August 11, 2005 and found "[a]rthralgias without objective signs of significant degenerative nor inflammatory changes."  Tr. at 369.  Dr. Jones was "at a total loss to explain [Plaintiff's] symptomatology and his level of disability."  Tr. at 369.  Dr. Jones referred Plaintiff for a rheumatology consultation.  Tr. at 369.  The treatment notes do not contain findings supporting Dr. Jones's opinion that Plaintiff is unable to work.  Upon review, the ALJ articulated adequate reasons supported by substantial evidence for discounting Dr. Jones's opinion that Plaintiff is unable to work.

### 2. Dr. Longley

Dr. Longley treated Plaintiff predominantly for joint pain, but apparently also for headaches, depression, and anxiety.  Tr. at 373-90.  The ALJ identified Dr. Longley as a rheumatologist.  Tr. at 22.  On December 5, 2005, Dr. Longley completed a Medical

---

[7] Plaintiff does not directly address the ALJ's reasons for discounting Dr. Jones's opinion. <u>See</u> Pl.'s Mem. at 6-8.

Verification Form.  Tr. at 375-76.  On the Medical Verification Form, Dr. Longley indicated Plaintiff has been diagnosed with "L[ow] B[ack] P[ain]" and "undifferentiated autoimmune connective tissue disorder."  Tr. at 375.  Dr. Longley opined these conditions interfere with Plaintiff's ability to work.  Tr. at 375.  Responding to the question, "What physical or mental limitations need to be taken into consideration when participating in activities?" Dr. Longley stated "avoidance lifting running lifting."  Tr. at 375.  Dr. Longley expected Plaintiff's condition to last for twelve months.  Tr. at 375-76.

The ALJ gave "very limited weight" to Dr. Longley's opinion that Plaintiff's "low back pain and undifferentiated connective tissue disorder would interfere with [Plaintiff]'s ability to work for 12 months."  Tr. at 23 (referring to Tr. at 375).  The ALJ articulated his reasons for discounting Dr. Longley's opinion:

> [I]t is quite conclusory, providing very little explanation of the evidence relied on in forming the opinion.  In fact, the provider's corresponding treatment notes of the same date indicate that while [Plaintiff] had some strength deficits, he had full range of motion, no active synovitis, and [Plaintiff] was able to rise comfortably to walk and walked without difficulty. This opinion is without substantial support from the other evidence of record.

Tr. at 23.[8]

Upon review, the opinion Dr. Longley expressed in the Medical Verification Form is conclusory and provides almost no explanation as to how it was reached.  A treating physician's opinion "may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory."  Edwards v. Sullivan, 937 F.3d 580, 583 (11th Cir. 1991).  In addition, the ALJ correctly observed that Dr. Longley's treatment notes dated December

---

[8] Plaintiff does not directly address the ALJ's reasons for discounting Dr. Longley's opinion.  See Pl.'s Mem. at 6-8.

5, 2005 seem to contradict his opinion about Plaintiff's ability to work.  The December 5, 2005 treatment notes indicate there were no active synovtis or articular deformities; Plaintiff had a full range of motion; and Plaintiff was able to rise comfortably and walk without difficulty.  Tr. at 378.

At any rate, it appears the ALJ's RFC determination is generally consistent with Dr. Longley's opinion.  Dr. Longley did not opine Plaintiff was totally incapable of performing any work whatsoever; rather, he opined Plaintiff's low back pain and undifferentiated connective tissue disorder would "interfere" with Plaintiff's ability to work, and the only limitations Dr. Longley indicated were the avoidance of running and lifting.  Tr. at 375.  The ALJ limited Plaintiff to sedentary work with the additional limitation that Plaintiff requires crutches to ambulate.  Tr. at 19.

Based on the foregoing, the ALJ's decision with respect to Dr. Longley is supported by substantial evidence.  The ALJ articulated adequate reasons supported by substantial evidence for giving very limited weight to Dr. Longley's opinion that Plaintiff's low back pain and undifferentiated connective tissue disorder would interfere with Plaintiff's ability to work for a period of twelve months.

### 3.  Dr. Hodgin

Dr. Hodgin treated Plaintiff for mental health issues.  <u>See, e.g.</u>, Tr. at 260, 276, 297. On December 5, 2005, Dr. Hodgin completed a Medical Verification Form indicating Plaintiff had been diagnosed with PTSD.  Tr. at 433-34.[9]  In response to the question, "Does this condition permit work with restrictions?" Dr. Hodgin indicated "Yes" and stated "[i]n the

---

[9]  There are duplicate copies of the December 5, 2005 Medical Verification Form.  Tr. at 371-72.

future–unable to work at this time." Tr. at 433.  Dr. Hodgin expected these restrictions to last

for an "indefinite" duration.  Tr. at 433.  Dr. Hodgin further stated Plaintiff was experiencing

"ongoing Depression and Anxiety - low frustration tolerance."  Tr. at 433.

The ALJ gave Dr. Hodgin's opinion "some weight."  Tr. at 23.  The ALJ explained that

Dr. Hodgin's opinion was "quite vague, with no explanation provided for the cause or duration

of the restriction."  Tr. at 23.[10]  In addition, a review of the record reveals Dr. Hodgin's opinion

is not bolstered by the evidence.  The ALJ discussed in detail the evidence related to

Plaintiff's alleged mental impairments:

> The evidence in support of [Plaintiff]'s mental health limitations indicates
> [Plaintiff] has been prescribed and has taken appropriate medications for his
> impairments, and the medical record reveals that the medications have been
> relatively effective in controlling [Plaintiff]'s symptoms. [Plaintiff] reported no
> side effects from these medications. [Plaintiff]'s cognitive functioning appeared
> intact and the claimant continues to function adequately in a wide range of
> routine daily activities within his physical and motivational limitations, including
> pet care, enjoyment of television and video games, and socialization with his
> relatives and friends.  Overall, the undersigned finds inadequate support within
> the record for more than moderate limitations in concentration, persistence, or
> pace.

Tr. at 22.  Nevertheless, based on Dr. Hogin's opinion, the ALJ included a requirement for

low stress work in Plaintiff's RFC.  Tr. at 23.

Upon review, substantial evidence supports the ALJ's review of the evidence

regarding Plaintiff's mental impairments, as well as the ALJ's characterization of Dr. Hodgin's

opinion as conclusory, vague, and lacking explanation.  Still, the ALJ took Dr. Hodgin's

---

[10]  Plaintiff does not directly address the ALJ's reasons for discounting Dr. Hodgin's opinion.  See Pl.'s
Mem. at 6-8.

opinion into account by including the requirement of low stress in Plaintiff's RFC.  The ALJ

did not err by giving "some weight" to Dr. Hodgin's opinion.

### 4.  Dr. Schert

On August 29, 2005, Dr. Schert conducted an examination of Plaintiff for the VA.  Tr.

at 404-10.[11]  Dr. Schert opined Plaintiff is "100% unemployable" and reached the following

conclusions in the diagnoses section of his report:

> DIAGNOSES: 1. History of thoracic spine strain.  2. Spondyloarthropathy
> affecting the thoracic, lumbar and cervical spine.  I believe that this is all part
> of the same condition that began in his knees in the military.  Final diagnosis
> will be made by a rheumatologist hopefully within the next month, but
> microscopic hematuria, negative rheumatoid factor, chronicity, photophobia,
> and enthesitis of heels ad [sic] hands all suggest Reiter's syndrome.  The
> necessary joint asperation and expensive HLA studies to confirm Reiter's
> syndrome will not be performed for these studies are likely to be performed by
> a [r]heumatologist in the very near future.  The onset of back, knee and left
> shoulder pain in the Marines causes me to opine that [Plaintiff]'s back, knee,
> and left shoulder pathology, possible Reiter's syndrome, began in the military.
> Alternate diagnoses are lupes-like syndrome or ankylosing spondylitis.
> [Plaintiff] is presently 100% unemployable. . . .

Tr. at 410.

The ALJ gave "little weight" to Dr. Schert's opinion that Plaintiff is "presently 100%

unemployable."  Tr. at 22 (referring to Tr. at 410).  The ALJ recognized that "Dr. Schert's

opinion apparently followed an extensive examination of the claimant . . . ."  Tr. at 22.

However, the ALJ pointed out Dr. Schert concluded a final diagnosis would have to be made

by a rheumatologist.  Tr. at 22.  In addition, the ALJ noted Dr. Schert did not actually request

---

[11]  Although Plaintiff characterizes Dr. Schert as a treating physician, Pl.'s Mem. at 7, it appears Dr. Schert examined Plaintiff on only one occasion, and therefore his opinion may not be entitled to the same weight as the opinion of a treating physician.  However, the undersigned does not use this as a basis for finding the ALJ's decision regarding Dr. Schert's opinion is supported by substantial evidence.  For purposes of this Opinion and Order, Dr. Schert is considered a treating physician.

the diagnostic studies he felt were necessary to confirm Reiter's syndrome.  Tr. at 22.

Furthermore, the ALJ found that "[s]ubsequent physical examinations within the record do

not support the severity of the findings of Dr. Schert, including that of Dr. Longley, a

rheumatologist, who provided only temporary restrictions."  Tr. at 22.[12]

Upon review, it appears Dr. Schert's opinion is based upon a diagnosis that was not

final because Dr. Schert noted a final diagnosis would have to be made by a rheumatologist.

Tr. at 410.    Plaintiff does not dispute the ALJ's description of Dr. Longley as a

rheumatologist, and Dr. Longley diagnosed Plaintiff with "undifferentiated autoimmune

connective tissue disorder" rather than Reiter's syndrome.  Compare Tr. at 375 with Tr. at

410. Under the circumstances, the differing diagnosis by the rheumatologist undermines the

reliability of Dr. Schert's opinion.  Dr. Schert's opinion is even more restrictive than the

opinion of Dr. Longley, whose opinion the ALJ discounted as conclusory and contradicted

by his own treatment notes, a decision that has already been determined to be supported

by substantial evidence.  See supra pp. 8-10.  Furthermore, Dr. Schert's opinion is

unsupported by subsequent examinations of Plaintiff.  For example, a July 13, 2006 physical

examination conducted by Timothy J. McCormick, DO, MPH, "did not identify any specific

arthropathy findings in the joints."  Tr. at 506-10.  After a thorough review of the entire record,

substantial evidence supports the ALJ's decision to discount the medical opinion of Dr.

Schert.

_____

[12]  Plaintiff does not directly address the ALJ's reasons for discounting Dr. Schert's opinion.  See Pl.'s
Mem. at 6-8.

### 5. Dr. Hilgenberg

Dr. Hilgenberg apparently provided treatment to Plaintiff and referred him to Heartland Rehabilitation Services.  Tr. at 553.  After the issuance of the ALJ's Decision but before the denial of review by the Appeals Council, Plaintiff submitted the opinion of Dr. Hilgenberg. Tr. at 610.  The Appeals Council considered this new evidence and made it a part of the record.  Tr. at 5, 8.  In its entirety, Dr. Hilgenberg's opinion consists of four sentences:

> [Plaintiff] is a patient in the Primary Care Clinic at the Gainesville Veterans Medical Center.
> [Plaintiff] is currently undergoing evaluation and treatment for several medical conditions.
> At this time [Plaintiff] is unemployable.
> Feel free to contact me for further information.

Tr. at 610.  The issue is whether the denial of benefits is rendered erroneous by this new evidence.  See Ingram, 496 F.3d at 1262 ("When no new evidence is presented to the Appeals Council and it denies review, then the administrative law judge's decision is necessarily reviewed as the final decision of the Commissioner, but when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous").

In Robinson v. Astrue, 365 F. App'x 993, 996 (11th Cir. 2010) (unpublished), a panel of the Eleventh Circuit confronted a highly similar situation.  In Robinson, the claimant submitted to the Appeals Council "a disabled person's license plate affidavit completed by her treating physician," in which the claimant's treating physician opined regarding the claimant's walking limitations.  Robinson, 365 F. App'x at 996.  The Robinson Court explained that the Appeals Council is required to consider "new, material, chronologically relevant evidence" and must remand the case if the ALJ's decision is contrary to the weight

of the evidence currently of record. Id. Nonetheless, the Appeals Council may deny review if it finds no error after considering the new evidence. Id. The Robinson Court concluded that the Appeals Council did not err by upholding the denial of benefits without making specific findings, explaining that "the Appeals Council was free to discount the treating physician's opinion concerning [the claimant]'s walking limitation because that opinion was inconsistent with the physician's other assessments and with other substantial evidence." Id. at 997.

Assuming without deciding that Plaintiff's appeal of the Commissioner's "final decision" is sufficient to challenge both the ALJ's decision and the Appeals Council's decision to deny review of the ALJ's decision,[13] remand is not required here.  Dr. Hilgenberg's opinion is conclusory and unsupported by treatments notes or clinical findings.  Under Eleventh Circuit precedent, there was good cause to discount Dr. Hilgenberg's opinion as conclusory and not bolstered by the evidence.  See Phillips, 357 F.3d at 1240-41; cf. Robinson, 365 F. App'x at 996-97.  Therefore, the Appeals Council did not err in upholding the ALJ's Decision after receiving the opinion of Dr. Hilgenberg.

---

[13] The Appeals Council considered the new evidence and made it a part of the record. Tr. at 5, 8.  "[A] federal district court must consider evidence not submitted to the administrative law judge but considered by the Appeals Council when that court reviews the Commissioner's final decision denying Social Security benefits." Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1258 (11th Cir. 2007). Nevertheless, the Commissioner argues "Plaintiff does not challenge the [Appeals Council]'s denial of his request for review," and therefore "the district court does not consider this additional evidence in determining whether substantial evidence supports the ALJ's decision." Memorandum in Support of the Commissioner's Decision (Doc. No. 13; "Def.'s Mem.") at 16-17 (citing Ingram, 496 F.3d at 1258). It appears the Commissioner is attempting to draw a distinction between claimants who challenge "only the ALJ's decision," and claimants who challenge the Appeals Council's decision to deny review of the ALJ's decision. See Ingram, 496 F.3d at 1266 (stating that "[w]e understand Falge[ v. Apfel, 150 F.3d 1320 (11th Cir. 1998)] to hold that when a claimant challenges the administrative law judge's decision to deny benefits, but not the decision of the Appeals Council to deny review of the administrative law judge, we need not consider evidence submitted to the Appeals Council"). It is not necessary to resolve this issue here because, as explained herein, there is good cause to discount Dr. Hilgenberg's opinion. See Robinson, 365 F. App'x at 996-97.

### B. GAF Scores

Plaintiff argues the ALJ "failed to address [Plaintiff's] low GAF scores or to indicate what weight" was given to the GAF scores. Pl.'s Mem. at 9 (capitalization omitted). Plaintiff points out that the VA gave Plaintiff GAF scores as low as forty-five. Id. (citing Tr. at 394). Plaintiff relies on McCloud v. Barnhart, 166 F. App'x 410 (11th Cir. 2006) (unpublished) in arguing the ALJ's failure to refer specifically to Plaintiff's GAF scores requires remand. Id. In McCloud, the ALJ erroneously described the claimant's GAF score of forty-five to be "reflective of moderate symptoms" when in fact a GAF score of forty-five "indicates severe impairments." McCloud, 166 F. App'x at 418. The Eleventh Circuit rejected the argument that this error was harmless because it could not be determined from the record "what weight the ALJ placed on the GAF score of 45." Id. The ALJ was instructed to "consider what, if any, weight to accord" the GAF score. Id.

McCloud is factually distinguishable. Unlike the ALJ in McCloud, the ALJ here did not misinterpret any of Plaintiff's GAF scores, which eliminates the apparent concern in McCloud that the ALJ's denial of benefits was based on a misunderstanding of the evidence. See id. (stating that, "[w]ith the knowledge that a GAF score of 45 reflects severe impairments, the ALJ should determine what, if any, weight to place on the score").

In addition, at least one other court in this district has concluded that "the ALJ's failure to discuss a single GAF score does not require reversal under McCloud[.]" Bruner v. Comm'r of Soc. Sec., No. 8:08-cv-1744-T-27GJK, 2009 WL 3052291, at *2 (M.D. Fla. Sept. 23, 2009). "The [GAF] Scale describes an individual's overall psychological, social, and occupational functioning as a result of mental illness, without including any impaired

functioning due to physical or environmental limitations." <u>Mathis v. Astrue</u>, No. 3:06-cv-816-J-MCR, 2008 WL 876955, at *7, n. 4 (M.D. Fla. Mar. 27, 2008) (unpublished) (citing Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") (4th ed. 1994) at 32). While GAF scores have been frequently used in Social Security disability benefits determinations, courts often give them limited weight. "Reliance upon a GAF score is of questionable value in determining an individual's mental functional capacity." <u>Gasaway v. Astrue</u>, No. 8:06-cv-1869-T-TGW, 2008 WL 585113, at *4 (M.D. Fla. Mar. 3, 2008) (unpublished) (citing <u>Deboard v. Comm'r of Soc. Sec.</u>, No. 05-6854, 211 F. App'x 411, 415-416 (6th Cir. 2006) (unpublished)); <u>see also</u> <u>Wind</u>, 133 F. App'x at 692 n. 5 (noting that the Commissioner of Social Security has indicated that GAF scores have no direct correlation to the severity of a mental impairment); <u>Parsons</u>, 2008 WL 539060, at *7 (same). "Standing alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work." <u>Lee v. Barnhart</u>, 117 F.App'x 674, 678 (10th Cir. 2004). When GAF scores are considered, "courts generally find that a GAF score of 50 or below is not in and of itself determinative of disability." <u>Jones v. Astrue</u>, 494 F. Supp. 2d 1284, 1288 (N.D. Ala. 2007) (citing, among others, <u>Hillman v. Barnhart</u>, 48 F. App'x 26, 30 n.1 (3d Cir. 2002) (unpublished) (noting a GAF score of fifty indicates a claimant is capable of performing some substantial gainful activity); <u>Seymore v. Apfel</u>, 131 F.3d 152, 1997 WL 755386 at *2 (10th Cir. 1997) (explaining that a GAF score of forty-five does not necessarily prove a claimant is unable to hold a job)); <u>but see</u> <u>Lloyd v. Barnhart</u>, 47 F. App'x 135, 135 n.2 (3d Cir. 2002) (noting that a vocational expert opined that a GAF score below fifty indicates an inability to keep a job).

Here, the ALJ's failure to mention Plaintiff's GAF scores does not require remand. Although the ALJ did not specifically refer to Plaintiff's GAF scores, the ALJ discussed Plaintiff's mental impairments and explained in detail how they were considered.  Tr. at 18, 22.  Moreover, the ALJ specifically referred to and discussed an examination conducted by Dr. Hodgin on November 16, 2005.  Tr. at 22 (referring to Tr. at 260-63).[14]  During the examination, Dr. Hodgin gave Plaintiff a GAF score of 45.  Tr. at 260-63.  The ALJ had to have been aware of this GAF score and taken it into account in rendering his Decision.  See Tr. at 22 (referring to Tr. at 260-63).  After considering all of the evidence, the ALJ concluded Plaintiff was not disabled, and the ALJ provided a detailed explanation for this conclusion. Tr. at 18-25.  A thorough review of the entire record reveals that the ALJ properly considered Plaintiff's alleged mental impairments.  The ALJ's failure to refer specifically to the GAF scores does not render the ALJ's decision unsupported by substantial evidence.  See Dyer, 395 F.3d at 1211 (stating that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [a reviewing court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole") (internal quotation omitted).

## C. The Listings

Plaintiff argues "the ALJ failed to assess the Plaintiff's documented inability to ambulate effectively in regards to the equivalency of a listed impairment."  Pl.'s Mem. at 10 (capitalization omitted).  While this case was pending before the ALJ, "[n]either the claimant

---

[14]  It appears this report is partially duplicated at pages 392-94 of the Transcript, which are the records cited by Plaintiff.  See Pl.'s Mem. at 9 (citing Tr. at 394).

nor his attorney . . . alleged that he meets or medically equals any listed impairment." Tr. at

17.  Now, Plaintiff does assert his alleged impairment equals a listed impairment.  See Pl.'s

Mem. at 10-11.

At step three of the sequential evaluation process, the ALJ must determine whether

the claimant's impairment or combination of impairments meets or medically equals any of

the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.   20 C.F.R.

§ 404.1520(a)(4)(iii).  In arguing that the ALJ failed to assess Plaintiff's "inability to ambulate

effectively in regards to the equivalency of a listed impairment," Plaintiff refers to Medical

Listing 1.02.  Pl.'s Mem. at 10.  Listing 1.02 provides as follows:

> 1.02  Major dysfunction of a joint(s) (due to any cause): Characterized by
> gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous
> ankylosis, instability) and chronic joint pain and stiffness with signs of limitation
> of motion or other abnormal motion of the affected joint(s), and findings on
> appropriate medically acceptable imaging of joint space narrowing, bony
> destruction, or ankylosis of the affected joint(s).  With:
>> A.    Involvement of one major peripheral weight-bearing joint (i.e.,
>>       hip, knee, or ankle), resulting in inability to ambulate effectively,
>>       as defined in 1.00B2b; or
>> B.    Involvement of one major peripheral joint in each upper
>>       extremity (i.e., shoulder, elbow, or wrist-hand), resulting in
>>       inability to perform fine and gross movements effectively, as
>>       defined in 1.00B2c.

20 C.F.R. Part 404, Subpart P, Appendix 1, Part A, § 1.02 (emphasis added).

"For a claimant to show that his impairment matches a listing, it must meet all of the

specified medical criteria."  Sullivan v. Zebley, 493 U.S. 521, 530 (1990).  Plaintiff concedes

that he "does not have findings to support the 'gross anatomical deformity' requirements of

Listing 1.02[.]" Pl.'s Mem. at 11.  Thus, Plaintiff concedes he does not meet Listing 1.02.

Nevertheless, Plaintiff argues "he clearly meets the functional criteria and therefore the ALJ

erred in not finding as a matter of law that the Plaintiff has functional findings which are equal to a Listing." Id. Plaintiff cites nothing to support this argument.

"To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (quoting 20 C.F.R. § 404.1526). In other words, "[f]or a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar to the impairment." Sullivan, 493 U.S. at 531 (emphasis in original). Plaintiff does not even attempt to identify medical findings that are equal in severity to all of the criteria in Listing 1.02. Instead, Plaintiff argues–without citation–that because he meets part (the functional criteria) of Listing 1.02, his medical condition equals that Listing. Under the Regulations, however, "[a] claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." Sullivan, 493 U.S. at 531. Thus, Plaintiff's argument runs counter to the Regulations:

> (b)   How do we determine medical equivalence?  We can find medical equivalence in three ways.
>
>     (1)   (i)   If you have an impairment that is described in appendix 1, but–
>
>             (A)   You do not exhibit one or more of the findings specified in the particular listing, or
>
>             (B)   You exhibit all of the findings, but one or more of the findings is not as severe as specified in the particular listing,
>
>         (ii)   We will find that your impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria.

(2)    If you have an impairment that is not described in appendix 1, we will compare your findings with those for closely analogous listed impairments.  If the <u>findings related to your impairment(s) are at least of equal medical significance to those of a listed impairment</u>, we will find that your impairment(s) is medically equivalent to the analogous listing.

(3)    If you have a combination of impairments, no one of which meets a listing . . ., we will compare your findings with those for closely analogous listed impairments.  If the findings related to your impairments are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing.

20 C.F.R. § 404.1526(b) (emphasis added).[15]  It appears Plaintiff is attempting to establish medical equivalency under 20 C.F.R. § 404.1526(b)(1),[16] but Plaintiff has not identified any findings related to his impairment that are at least of equal medical significance to all of the required criteria; in particular, the "gross anatomical deformity" criterion and "findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)" criterion.  <u>See</u> 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A, § 1.02.  If Plaintiff is attempting to establish medical equivalence under 20 C.F.R. § 404.1526(b)(2), he has not identified the findings related to his impairment(s) that are at least of equal medical significance to those of a listed impairment.

Plaintiff's argument is totally lacking both legal and factual development.  Plaintiff fails to show that substantial evidence does not support the ALJ's finding that Plaintiff does not meet or medically equal Listing 1.20; nor does Plaintiff establish the ALJ committed any legal error in this regard.

---

[15]  <u>Compare</u> 20 C.F.R. § 416.926a (providing that children may establish disability by showing that an impairment "results in limitations that <u>functionally equal</u> the listings").  There is no similar Regulation for adults.

[16]  Plaintiff does not explain how he believes medical equivalence to Listing 1.02 is established.  <u>See</u> Pl.'s Mem. at 10-11.

### D. Inability to Ambulate Effectively

Plaintiff argues 'the ALJ erred in considering the full effects of the significant erosion of the unskilled sedentary occupational base as represented by Plaintiff's inability to ambulate effectively pursuant to Social Security Ruling 96.9p." Pl.'s Mem. at 11 (capitalization omitted).  In making this argument, Plaintiff misquotes Social Security Ruling 96-9p.  The incorrect quotation consists of the inclusion of the last sentence in the block quotation on page eleven of Plaintiff's Memorandum: "In fact the inability to stand or walk for a total of only a few minutes during the work day will result in a significant erosion of the unskilled sedentary occupation based therefore justifying a finding of disabled."  Pl.'s Mem. at 11.  Social Security Ruling 96-9p does not contain this sentence; the source of the sentence is unclear.[17]  Plaintiff then concludes his argument by asserting "[w]hen considered in conjunction with the ALJ's findings that the Plaintiff could not perform a full range of sedentary work and had additional mental health impairments, the ALJ made a mistake of law and should have found Plaintiff disabled pursuant to Section 201.00(h)."  Pl.'s Mem. at 11-12.

Plaintiff's argument is summary and insufficiently developed.  Presumably, Plaintiff is referring to 20 C.F.R. Part 404, Subpart P, Appendix 2, § 201.00(h).  Appendix 2 to Subpart P of Part 404 is often referred to as the Medical-Vocational Guidelines, or "Grids."  However,

---

[17] SSR 96-9p explains that "a limitation to standing and walking for a total of only a few minutes during the workday would erode the unskilled sedentary occupational base significantly.  For individuals able to stand and walk in between the slightly less than 2 hours and only a few minutes, it may be appropriate to consult a vocational expert."  SSR 96-9p, 1996 WL 374185, at *6.

application of the Grids assumes a full range of sedentary work, which the ALJ did not find,[18] and which Plaintiff does not now advocate.  Moreover, with respect to individuals under the age of forty-five,[19] § 201.00(h)(3) explains that "the inability to perform a full range of sedentary work does not necessarily equate with a finding of 'disabled.'" Plaintiff's argument is entirely unclear.

Regardless, a review of the record reveals the ALJ gave proper consideration to the full effects of the erosion of the unskilled sedentary occupational base resulting from Plaintiff's inability to ambulate effectively.  Social Security Rule 96-9p states that "the occupational base for an individual who must use such a [hand-held assistive] device for balance because of significant involvement of both lower extremities . . . may be significantly eroded."  SSR 96-9p, 1996 WL 374185, at *7.  In such circumstances, "it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work."  Id.  The ALJ explicitly found that Plaintiff needed crutches to ambulate, Tr. at 19, and this limitation was included in the hypothetical to the VE, Tr. at 24-25, 651.  Thus, the ALJ complied with SSR 96-9p.

### E.  VA Disability Rating

Plaintiff argues "the ALJ erred as a matter of law in failing to address what weight, if any, he was giving to the opinions of the [VA], who had previously ruled that Plaintiff was unemployable due to multiple medical impairments."  Pl.'s Mem. at 5 (capitalization omitted).  Plaintiff appears to be asserting that, because Dr. Schert and Dr. Hilgenberg opined that

---

[18]  The ALJ explicitly limited Plaintiff to ambulating with crutches and low stress work.  Tr. at 19.

[19]  Plaintiff was twenty-nine at the time of the hearing.  Tr. at 618.

Plaintiff is 100% unemployable, the VA gave Plaintiff a 100% disability rating.  See Pl.'s

Mem. at 5-6.[20]  This is not an accurate characterization of the evidence.  The VA actually

provided Plaintiff with an "[i]nitial grant of VA compensation of 40%" based on medical

conditions that, as of September 2, 2001, were determined to be forty percent disabling in

total.  See Tr. at 84-85.  After the ALJ rendered his Decision, Plaintiff submitted additional

evidence from the VA.  Tr. at 8, 604-11.[21]  Included in the new evidence is an August 7, 2008

Rating Decision from the VA, which reflects an increase in Plaintiff's disability rating from a

total of forty percent to a total of sixty percent.  Tr. at 604, 607.[22]  Contrary to Plaintiff's

assertions,[23] the VA did not find that Plaintiff was "100% unemployable."  In fact, the VA

explicitly denied Plaintiff "entitlement to individual unemployability."  Tr. at 609.

"A VA rating is certainly not binding on the [Commissioner], but it is evidence that

should be considered and is entitled to great weight."  Rodriguez v. Schweiker, 640 F.2d 682,

686 (5th Cir. 1981) (commenting that "[a] VA rating of 100% disability should have been

more closely scrutinized by the ALJ");[24] see also 20 C.F.R. § 404.1504.  In Kemp v. Astrue,

308 F. App'x 423 (11th Cir. 2009) (unpublished), the claimant argued the ALJ committed

---

[20]  Plaintiff is basing his argument on the opinions of Dr. Schert and Dr. Hilgenberg.  Id.  However, for the reasons explained supra pp. 7-15, there was good cause to discount their opinions.

[21]  The Appeals Council considered the new evidence and made it a part of the record.  Tr. at 5, 8.  For the reasons explained supra n.11, it is not necessary to determine whether Plaintiff has challenged the Commissioner's final decision in a manner that allows for consideration of the new evidence because, as explained herein, the new evidence does not support a finding of disability.

[22]  The pages of the VA's August 7, 2008 Rating Decision are not in the correct order.  See Tr. at 604-09.

[23]  Pl.'s Mem. at 5-6.

[24]  In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the former United States Court of Appeals for the Fifth Circuit that were rendered prior to the close of business on September 30, 1981.

reversible error by failing to give great weight to the disability ratings of the VA. <u>Kemp</u>, 308 F. App'x at 424, 426.   A panel of the Eleventh Circuit observed that the ALJ in <u>Kemp</u> "continuously refer[ed] to the VA's evaluations and disability rating throughout the evaluation process." <u>Id.</u> at 426.   Because the ALJ "relied on the VA records and referenced the disability findings, in addition to the rest of the relevant evidence, throughout his decision," the ALJ "implicitly found that the VA disability ratings were entitled to great weight." <u>Id.</u> (emphasis added) (pointing out that the ALJ "gave specific reasons for why the VA's 30% disability rating based on PTSD did not qualify the condition as a severe impairment under the SSA guidelines").   The <u>Kemp</u> Court concluded it was permissible for the ALJ to determine implicitly the weight afforded to the VA disability rating. <u>Id.</u> Therefore, the ALJ's decision was affirmed. <u>Id.</u>

Here, the ALJ did not discuss the VA's disability rating.  However, remanding the case for the ALJ to consider the evidence from the VA would be an exercise in futility because the evidence does not actually support a finding of disability and would not change the result. "No principle of administrative law or common sense requires [a court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." <u>Fisher v. Bowen</u>, 869 F.2d 1055, 1057 (7th Cir. 1989).   The VA explicitly denied Plaintiff's "entitlement to individual unemployability." Tr. at 609.   The VA's denial of Plaintiff's entitlement to individual employability does not support a finding that Plaintiff is disabled under the Social Security Act; rather, this evidence is consistent with the ALJ's Decision.  It follows that, even if the ALJ had given great weight to the evidence from the VA,

the ALJ still would have reached the same result.  Remanding for the ALJ to consider such evidence would be a pointless waste of resources.

Based on the foregoing, the ALJ's failure to refer specifically to the VA's disability rating does not require remand.  After considering the evidence, including the new evidence submitted to the Appeals Council, the evidence from the VA would not change the result and actually supports the ALJ's Decision.

### F.  Substantial Evidence

Plaintiff argues that "the ALJ failed to follow the substantial evidence on the record." Pl.'s Mem. at 8-9 (capitalization omitted).  As with Plaintiff's argument regarding the treating physicians, Plaintiff makes a broad argument without citation to any specific evidence in the record.  Plaintiff reiterates that "all of Plaintiff's treating physicians, a total of five different doctors, indicated that he was disabled and unemployable." Id. at 8.[25]  However, the ALJ discounted these physicians' opinions because the ALJ found them to be conclusory, unsupported, or contradictory to the physician's own treatment notes.  Tr. at 22-23.  For the reasons previously stated, supra pp. 7-13, the ALJ articulated adequate reasons supported by substantial evidence establishing good cause for discounting the opinions of Dr. Jones,

---

[25]  In arguing that "[s]urely the cumulative effect of five different treating physicians offering the same opinion constitutes substantial evidence," Plaintiff cites Bruet v. Barnhart, 313 F. Supp. 2d 1338 (M.D. Fla. 2004).  Pl.'s Mem. at 8.  Upon review, Bruet does not stand for that proposition.  In Bruet, the claimant's treating rheumatologist opined the claimant was no longer able to work, but the ALJ gave significant weight to the opinion of a nonexamining state agency physician who opined the claimant could perform sedentary work.  Id. The Bruet court remanded, explaining that good cause to discount the opinion of a treating physician is not established by the contradictory opinion of a nonexamining physician.  Id. at 1346.  Here, as explained supra pp.7-15, the ALJ articulated adequate reasons supported by substantial evidence establishing good cause for discounting the opinions of the treating physicians.  The conclusory opinions of five physicians do not somehow accumulate into substantial evidence when there is good cause to discount each of those opinions.

Dr. Longley, Dr. Hodgin, and Dr. Schert; there was also good cause to discount the opinion of Dr. Hilgenberg.  See supra pp. 13-15.

In addition, the ALJ reviewed in detail all of the evidence of record, including the medical evidence and Plaintiff's testimony.  Tr. at 18-23.  The ALJ explained why the totality of the objective evidence weighs against a finding of disability:

> In searching for evidence that would support the claimant's allegations regarding his limitations related to his musculoskeletal complaints, the undersigned notes that the objective evidence fails to provide a compelling basis for the claimant's statements regarding his inability to sit, stand, or walk for more than minimal periods, or lift more than a few pounds.  While the clinical findings reveal [Plaintiff] has some limitations in the shoulders and back, examinations and diagnostic testing have not revealed significant findings objectively and the claimant retains full motion to passive testing of the joints, with no evidence of strength, sensation, or reflex deficit, and examinations have found no muscle atrophy or asymmetry.  Even Dr. Jones noted on August 11, 2005, that the claimant's arthalgias were without objective signs of significant degenerative or inflammatory changes, adding that he was at a total loss to explain the claimant's symptomatology[.]

Tr. at 21.[26]

The ALJ further observed that the treatment Plaintiff received was conservative; Plaintiff has not been hospitalized or undergone surgery for his condition, and he takes relatively little pain medication (one Percocet every other day).  Tr. at 21.  Conservative treatment is evidence that may appropriately be considered by an ALJ in determining

---

[26]  Plaintiff cites Thompson v. Barnhart, 493 F. Supp. 2d 1206 (S.D. Ala. 2007) without explaining how it applies here.  In Thompson, a treating physician diagnosed the claimant with migraines.  Thompson, 493 F. Supp. 2d at 1212.  Although the ALJ recognized that migraines cannot be established through objective observations, the ALJ still discounted a treating physician's opinion because it was unsupported by clinical examinations containing objective evidence.  Id. at 1215.  The court determined this was error.  Id.  In contrast to Thompson, the ALJ here found that Dr. Jones was "at a loss" to explain Plaintiff's condition; Dr. Longley's opinion contradicted his own treatment notes; and Dr. Schert's opinion was contingent on the diagnosis of a rheumatologist.  Tr. at 22-23.  The ALJ here points out the lack of objective medical evidence, and the ALJ also identifies aspects of the record that are inconsistent with Plaintiff's alleged symptoms and the opinions of the treating physicians.  Tr. at 20-21.

whether a claimant is disabled.  See Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996).

Plaintiff does not identify any specific evidence that contradicts or is inconsistent with the

ALJ's findings.  See Pl.'s Mem. at 8-9.

As previously explained, "[s]ubstantial evidence is something 'more than a mere

scintilla, but less than a preponderance.'"  Dyer, 395 F.3d at 1210.  The Commissioner's

decision must be affirmed if it is supported by substantial evidence–even if the evidence

preponderates against the Commissioner's findings.  Crawford, 363 F.3d at1158-59.  After

an independent, thorough review of the entire record, the undersigned finds that the ALJ's

decision is supported by substantial evidence.

## V.  Conclusion

A thorough review of the entire record reveals that the Commissioner's final decision

is supported by substantial evidence.  For the reasons explained herein, it is

**ORDERED:**

1.      The Clerk of Court is directed to enter judgment pursuant to sentence four

of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's final decision.

2.      The Clerk is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on August 13, 2010.

James R. Klindt

**JAMES R. KLINDT**
United States Magistrate Judge

jdf
Copies to:
Counsel of Record